DES MOINES COUNTY (RUSCH v.). See Case No. 12,142.

DESMOND (UNITED STATES v.). See Case No. 14,951.

## Case No. 3,822.

### DESPAN v. OLNEY.

[1 Curt. 306;[1] 2 Liv. Law Mag. 354.]

Circuit Court, D. Rhode Island. Nov. Term, 1852.

MILITARY OFFICER—ORDERS OF SUPERIOR—CIVIL LIABILITY.

1. A military officer, acting under the law martial, is justified by an order from a superior officer, apparently within the scope of his authority.

2. If the superior has secretly abused his power, he, and not the inferior who executes the order, is answerable.

This was an action of trespass. It appeared, that in June, 1842, the plaintiff [John S. Despan] was a citizen of Rhode Island, residing at Pawtucket; and that the defendant [James N. Olney] came to his shop, in that village, accompanied by several files of soldiers, arrested the plaintiff, and after holding him in confinement for a few hours in a neighboring tavern, had him conveyed to the city of Providence, where he was confined for several days, and then permitted to return home. The defendant pleaded a statute of limitations of Rhode Island, which barred all actions, for acts done while the state was under martial law, provided such acts were intended to preserve the peace of the state, and to aid the people and government thereof against the open or suspected hostility of the person complaining; and issue was taken and joined upon the averment of the plea, that the act in question was done with that intent. It was shown that the defendant was a native born citizen of Rhode Island, but resided at Brooklyn, in the state of New York; that in June, 1842, he came to Providence, and volunteered his services, and received a commission as captain from the governor, and was ordered to Pawtucket, in consequence of some alarm excited by disturbances there and in the neighborhood; that very soon after his arrival there, an order was given to him by Major-General Anthony, who was the highest in military command at that time and place, to arrest the plaintiff; that he executed this order without any unnecessary violence, and it was admitted that he bore no personal malice against the plaintiff, with whom, it did not appear, he had any acquaintance. The act of the legislature of Rhode Island, placing the state under martial law, was then in force. It was shown that the plaintiff, some weeks before the time in question, had commanded a military company, raised to support what was called the people's constitution, and was present, with his company, when an attack was made on the arsenal at Providence. But it also appeared, that, after the president of the United States had recognized the government organized under the original charter of Rhode

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

Island to be the lawful government of the state, the plaintiff had not taken any active part against that government, and had, on some occasions, used his influence to prevent others from doing so. But it did not appear that this was known, either to the plaintiff, or to General Anthony.

The district judge did not sit on the trial.

Mr. Weeden, for plaintiff.
Mr. Blake, for defendant.

CURTIS, Circuit Justice, directed the jury as follows:

The question for you to try is, whether the act of the defendant, in arresting the plaintiff, was intended by the defendant to preserve the peace of the state, and to aid the people and government thereof against the open or suspected hostility of the plaintiff. You perceive, it is a question of the defendant's intent; and the only mode of determining it is, to consider what he did, and under what circumstances the act was done; from these facts, which are shown by the evidence, you are to infer what the purpose or intent of the defendant was; a fact, not susceptible of being directly proved by evidence, because it is a state of mind. It appears by the act of assembly which has been read, that martial law then existed in Rhode Island. It has been determined by the supreme court of the United States, in a case which went up to that court from this district, that the legislature of a state has power to proclaim martial law, whenever in its discretion, the public safety demands this extreme measure. And also, that, as the executive department of the government of the United States had recognized the government of Rhode Island, organized under its charter, as the only lawfully existing government of the state, all other departments of the government of the Union were bound thereby. You will, therefore, take it to be the law in this case, that martial law had been rightfully proclaimed, and did exist, at the time when the acts complained of were done. But the existence of martial law does not authorize general military license, or place the lives, liberty, or property of the citizens of the state under the unlimited control of every holder of a military commission.

It is not needful, in this case, to point out the limits of the authority which it confers. It is enough to say, that under the issue you are trying, the existence of martial law is not, of itself, a justification of the defendant. He must also satisfy you that the act done by him, under that law, was intended by him to preserve the peace of the state, and to aid the existing government, and not from recklessness, or a love of power, or to gratify any bad passion. Still, the fact that martial law existed, has a most important bearing on the question of the intent of the defendant. He held a commission as captain. He received an order from his commander. He was bound to obey all lawful orders. And if this order was one which, upon its face, was lawful, and he did no more than execute it, you will consider whether it would not be proper to conclude, that he acted simply with an intent to do his duty, unless some other intent appears. Now, as martial law existed, and as Major-General Anthony had authority under that law, for sufficient cause known to him, to cause the arrest of the plaintiff, the order to do so was, upon its face, a lawful order. And I do not think the defendant was bound to go behind an order, thus apparently lawful, and satisfy himself, by inquiry, that his commanding officer proceeded upon sufficient grounds. To require this, would be destructive of military discipline, and of the necessary promptness and efficiency of the service.

It is a general principle, that an executive officer is justified by his precept. If the court from which it issues has jurisdiction, and the precept is regular on its face, it is neither the right nor the duty of the civil officer to inquire further. Something like this is true of a military officer. If he receive an order from his superior, which, from its nature, is within the scope of his lawful authority, and nothing appears to show that that authority is not lawfully exerted in the particular case, he is bound to obey it; and if it turns out, that his superior had secretly abused or exceeded his power, the superior, who is thus guilty, must answer for it, and not the inferior, who reasonably supposed he was doing only his duty. And therefore, if in this case, you find, as matter of fact, that the defendant did receive from his commander, an order to arrest the plaintiff, and that there was no fact known to the defendant, which would have made the arrest an abuse of power by General Anthony, you will then take it that the defendant was bound to obey that order, and you will consider whether he did not act from this motive. If he did act simply from a desire to do his military duty, you will then consider whether his intent was to preserve the peace of the state, and aid the people and government thereof, against the open or suspected hostility of the plaintiff.

The defendant had volunteered his services as a soldier. No evidence has been given, tending to show that he had any motive in doing so, except the ostensible one, to aid the existing government in their unhappy troubles. And if his object, in entering the service, was to preserve the peace of the state, and aid its government against open or suspected hostility, you will inquire whether this general purpose did or did not actuate him, in doing the act complained of; whether there is any ground to impute to him any other motive; if you find none, and

I must say I know of no evidence of any other, or any thing tending to show that he did act with any other intent, then you ought to find this issue in his favor. The contest, which so deeply agitated this state, though long terminated, may have left deep impressions upon your minds; and, out of the jury-box, you might differ very widely, in opinion, respecting its merits. But, fortunately, its merits are not here to be tried. You may all have a fixed opinion, that the government, under the charter, was in the right, or that it was in the wrong; or you may be quite unable to agree on that point; and yet, you may be able to agree, and be bound, as conscientious men, to agree upon a verdict in this case. If you find the defendant's intent was not what he has stated in his plea, you should convict him, though you are of opinion that the charter government, whose soldier he was, was entirely to be approved. And if, on the other hand, you believe he did the act complained of with the intent alleged, then you are bound to acquit him, though you should all be convinced that that government was wrongfully sustained.

The jury found for the defendant.